UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12573-RGS

JOSEPH PERRONCELLO

v.

WILMINGTON TRUST NATIONAL ASSOCIATION
and SPECIALIZED LOAN SERVICING, LLC

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

February 16, 2018

STEARNS, D.J.

Plaintiff Joseph Perroncello seeks to recover damages flowing from what he contends was an unnecessarily protracted (and ultimately unsuccessful) mortgage loan mitigation assistance application process. Discovery having been concluded, defendants Wilmington Trust National Association and Specialized Loan Servicing, LLC (SLS)[1] move for summary

---

[1] Defendants removed this action from state court on the basis of diversity jurisdiction. In their Notice of Removal, SLS is identified as a foreign corporation with its principal place of business in Colorado. For diversity purposes, "the citizenship of a limited liability company is 'determined by the citizenship of all of its members.'" *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011), quoting *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006). To ensure that it has subject matter jurisdiction, *see Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-

judgment on all counts. For the reasons to be stated, defendants' motion will be ALLOWED.

In 2007, Perroncello and his then-wife took out a $3,000,000 mortgage secured by their primary residence at 198 Beacon Street, Boston. The couple defaulted on the mortgage in 2010. They remained in default until the end of 2016. Wilmington Trust and SLS came into the picture in 2012 as the successor owner and servicer of the mortgage. In February of 2015, the couple divorced. The final Divorce Decree required Perroncello to pay off the outstanding mortgage by August 1, 2015, and deed his interest in the property to his ex-wife.

Perroncello did not pay off the loan by the August 1, 2015 deadline. Thereafter, Perroncello and his former wife participated in court-ordered mediation over his failure to comply with the Divorce Decree. The mediator permitted Perroncello to seek loss mitigation assistance from SLS.

---

matter jurisdiction exists, even when no party challenges it."); the court has determined from SLS's pleading in another recent litigation that it is not a citizen of Massachusetts and is thus diverse from plaintiff, a Massachusetts citizen. *See Anctil v. Specialized Loan Servicng, LLC*, No 15-cv-14004, Dkt # 1 (Notice of Removal) at 1. ("SLS is a wholly owned subsidiary of Specialized Loan Servicing Holdings LLC ('SLS Holdings'). SLS Holdings is a limited liability company organized under the laws of the State of Delaware and has a principal place of business in Colorado. SLS Holdings' sole member is Computershare US Services, Inc., which is a Delaware Corporation with a principal place of business in Chicago, Illinois.").

(Although there is no copy of the Divorce Decree in the record, Perroncello maintains that the Decree required the mediator to give him permission.) After an inquiry by Perroncello in early 2016, SLS in a letter dated January 26, 2016, listed the documents necessary to complete a Request for Mortgage Assistance (RMA). Over the ensuing months, SLS sent a series communications to Perroncello, stating that while SLS had received some documents, others were still required to complete the RMA.

On May 31, 2016, SLS informed Perroncello that an additional letter of explanation had to be submitted no later than June 30, 2016. That same day, SLS noticed a foreclosure sale on the property for June 29, 2016. On June 26, 2016, Perroncello made a payment of some $1,728,000, thereby reinstating the mortgage. Perroncello continued making monthly payments until December of 2016, when he discharged the mortgage with a lump sum payment.

Perroncello brought this lawsuit in November of 2016. In the Amended Complaint (filed in December of 2016), he alleges that going forward from March of 2016, SLS misrepresented on several occasions that his RMA was complete and being processed. He also alleges that SLS requested duplicative and superfluous documents to perfect the RMA, and that SLS engaged in impermissible "dual tracking." *See Brickett v. HSBC*

3

*Bank USA, N.A.*, 607 F. App'x 5 (1st Cir. 2015) ("Dual tracking is a practice wherein a mortgagee financial institution engages in loan modification negotiations with mortgagors while at the same time moving forward with foreclosure.").[2]  Perroncello asserts four claims: violation of the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A (Count I); breach of the duty of good faith (Count II); fraud (Count III);[3] and negligent misrepresentation (Count IV).

Under Fed. Rule Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As

---

[2] Perroncello has waived the other liability theory asserted in the Amended Complaint, namely that defendants failed to honor an advantageous modification (in the form of reduced interest rate) orally offered to him by the loan's predecessor servicer. *See* Opp'n at 2 n.2.  The court will also not consider the allegations raised for the first time in the opposition to summary judgment that defendants improperly solicited Perroncello to apply for HAMP modification when the amount of his mortgage far exceeded the HAMP eligibility ceiling. *See Rios v. Municipality of Guaynabo*, 938 F. Supp. 2d 235, 250 (D.P.R. 2013) ("It is beyond dispute that a plaintiff is precluded from amending her complaint through argument at the summary judgment phase of proceedings." (internal quotation marks omitted)).  In any event, Perroncello does not allege that he applied for a HAMP modification, nor does he argue that he relied upon the solicitations to his detriment.

[3] Perroncello also appears to abandon his fraud claim in the opposition – he neither identifies the alleged intentionally fraudulent statements (as required by Fed. R. Civ. P. 9(b)), nor does he assert reliance.

a threshold matter, the court agrees with defendants that they owed no duty to Perroncello – whether of good faith as asserted in the Amended Complaint, or of good faith and fair dealing as recast in Perroncello's opposition – to provide mortgage mitigation assistance. "Absent a provision in the mortgage that specifically requires the mortgagee to negotiate a loan modification prior to conducting a foreclosure sale, a lender has no duty to do so" as a part of the mortgagee's duty of good faith in exercising the power of sale in a mortgage. *Brickett v. HSBC Bank USA, N.A.*, 52 F. Supp. 3d 308, 312 (D. Mass. 2014), *aff'd*, 607 F. App'x 5 (1st Cir. 2015). In the same vein, the "implied covenant [of good faith and fair dealing] may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005) (internal quotation marks omitted). Perroncello has not identified any undertaking by defendants in the mortgage contract to offer or provide mitigation assistance.

Defendants contend that with respect to his remaining claims, Perroncello has failed to establish loss causation. *See Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011) ("To prevail on a Chapter 93A claim, the plaintiff must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice

*and that the [plaintiff] suffered a loss of money or property as a result.*" (internal quotation marks omitted, emphasis supplied)); *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998) ("The elements of [negligent misrepresentation] are that the defendant falsely represented a past or existing material fact without any reasonable basis for thinking it to be true; that he intended to euchre the plaintiff into relying on the representation; that the plaintiff, unaware of the representation's falsity, justifiably relied on it; and *that the plaintiff suffered harm due to his reliance.*" (emphasis added)).

In the first instance, defendants contend that Perroncello did not incur any damages because the foreclosure on the property never took place. *See Wenegieme v. Bayview Loan Servicing*, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015) ("dual tracking" claim not ripe because foreclosure had not occurred). Further, defendants did not dictate a complete discharge of the mortgage – that obligation arose from Perroncello's Divorce Decree. *See* Pl.'s Suppl. Answer to SLS's First Set of Interrogs. (Pl.'s Ex. A, Dkt # 28-1 at 2) ("The Separation Agreement provided that I pay off the SLS mortgage . . . by August 1, 2015."); Perroncello Dep. Tr. (Defs.' Ex. C, Dkt # 20-3) at 175 ("Q: At some point, did the mediator require you to reinstate the mortgage? A: Yes. Q. And did he specifically require you to do that prior to the foreclosure

sale? A. Yes."); *id.* at 181 ("Q. And why did you end up paying it off in December 2016? Was that something that the mediator ordered you to do? A. Yes."); *id.* at 188-189 ("Q. So you end up paying off this loan in December 2016? Correct? A. Yes. Q. And the – and I think you testified that was pursuant to the mediator's order. Correct? A. Yes."). Finally, Perroncello concedes that given the size of the mortgage and the substantial equity in the property, he was never eligible for any mitigation relief. Opp'n at 3. Thus, he suffered no harm from any imperfection in the mitigation assistance application process.

In an attempt to sidestep the fact that by repaying the loan and redeeming the title to the property, he obtained precisely the benefit he had bargained for in his mortgage contract, Perroncello maintains that he suffered harm because SLS did not give him "accurate information regarding the lack of loss mitigation options available to him." Opp'n at 14. According to Perroncello, based on valuation information in SLS's possession as early as 2014, SLS should have told him that he did not qualify for loss mitigation assistance rather than string him along for several months in a bootless effort to complete an RMA.

> As a result of not knowing that SLS would make no options available to him, Perroncello did not avail himself of the opportunity to pay the loan off far earlier than 2016. More specifically, interest at $15,819.70 continued to accrue every

7

month, together with the carrying costs of the property which were approximately $8000/month in real estate taxes and $2000/month in insurance.

*Id.*[4]

In essence, Perroncello's argument is one of estoppel, that SLS's failure to inform him of his ineligibility for mitigation assistance should be conversely construed as a representation of his eligibility, a representation on which he relied to his detriment.

> Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.

---

[4] Although not a basis for its decision, the court questions Perroncello's assertion that he would have paid off the loan earlier had he been made aware of his ineligibility for loss mitigation assistance. It is clear from the record that Perroncello elected not to pay off the loan by the August 1, 2015 deadline set by his Divorce Decree, despite having had the financial means of doing so. *See* Perroncello Dep. Tr. (Defs.' Ex. C, Dkt # 20-3) at 166-167 ("Over that three-year period that we would talk to someone that, you know, I had concerns, obviously. I had assets to pay this loan. But I didn't have liquid assets that could pay it right away. So I wanted to be assured that they're not going to try to foreclose on me tomorrow. It would take me 30, 60, 90 days to accumulate all the funds to pay this off."). Tellingly, after he reinstated the mortgage in June of 2016, he continued to pay interest, insurance premiums, and taxes – the same carrying costs he alleges that he would have avoided – until the mediator ordered him to repay the loan *in toto* in December of 2016.

*Anzalone v. Admin. Office of the Trial Court*, 457 Mass. 647, 661 (2010). Although "[s]ilence may satisfy the first element of estoppel where it constitutes a representation of consent," *Reading Co-Op. Bank v. Suffolk Constr. Co.*, 464 Mass. 543, 556 (2013), SLS's silence does not as a matter of law constitute "a representation intended to induce reliance" because, as noted before., defendants did not owe a duty to offer or even consider any mitigation assistance option.[5]

Nor was any reliance by Perroncello on defendants' silence reasonable. SLS repeatedly informed Perroncello that his request for mitigation assistance would not be considered until the application was complete. In November of 2015, before Perroncello commenced the RMA process, SLS informed Perroncello's agent, Ken Rudolph, that "for a forbearance

---

[5] In the absence of a duty, defendants had no obligation to tailor their RMA process to meet Perroncello's particular needs. Although Perroncello was only interested in obtaining a negotiated short payoff to satisfy the Divorce Decree, had he completed the RMA, it would have allowed SLS to consider other potentially valuable avenues of relief. *See* Poch Dep. Tr. (Defs.' Ex. B, Dkt # 20-2) at 11 ("Q. . . . [O]nce you have gathered that information, what are the potential options? . . . A. Oh, we could do a forbearance, where we just hold off, if a borrower had a temporary issue causing them not to be able to make their payments. We could do a replay plan for delinquent payments. We can look at options to modify the loan, change the terms. We can assist the borrower in deciding if they would like to pursue a short sale of the property, or would they prefer a deed in lieu of foreclosure."); Wallace Aff. Exs. 8, 11 (listing a dozen mitigation options that SLS could not evaluate because Perroncello never got around to submitting a complete RMA).

agreement to be looked at[,] a completed RMA must be submitted."[6] Pl.'s Ex. B (Dkt # 28-1 at 7-8) at JPSLS0001; *see also id.* ("2/5/2016 . . . I was then advised that if we cannot complete the RMA that the bank will not be able to help with regards to any settlement."). The January 25, 2016 letter describing the necessary documents to complete an RMA stated that "*[o]nce we receive a complete package and verify your information*, we will determine whether you qualify for a foreclosure prevention option." Wallace Aff. (Dkt # 21) Ex. 2 at 4 (emphasis added). Each subsequent letter requesting missing documentation contained the same statement. *See* Wallace Aff. Exs. 3-10.

Perroncello next contends that he was at least entitled to rely on the representation made by SLS to Ken Rudolph on May 10, 2016, that his RMA was complete. Rudolph's call log for that dates states:

> 5/10/2016 ------ Called and spoke to Claudia and was advised that the filed was reopened and Norma is still the single point of contact. I was also advised that the file is back under review. Called back and spoke with Jackie and David Hoffmann on the line so he could listen and confirm that the file is reopened and I

---

[6] Defendants moved to strike Ken Rudolph's call log as unauthenticated inadmissible hearsay. *See* Dkt # 33. In opposition, Perroncello submitted an affidavit from Rudolph and argued (plausibly) that, for purposes of summary judgment, the call log falls under the business record exception to the hearsay rule. *See* Dkt # 37. The motion to strike will therefore be <u>DENIED</u>.

> should call back in 48 hours for an update[]. File is now complete and now under review.

Pl.'s Ex. B. Perroncello also points out that SLS's loan servicing notes contain an entry for May 10, 2016, stating that "COMPLETE PKG RCVD JACKIER." Pl.'s Ex. C (Dkt # 28-1) at SLS/Perroncello0000498. SLS, for its part, highlights two other servicing note entries for the same day showing that "SPOC/VI ADV YES DOC INTAKE SHOWS COMPLETE" and "Document 'Incomplete Core Package Acknowledgement . . . sent 5/10/2016," *id.*, and explains that the entries refer to completion of the document intake process, not that the RMA had been reviewed and deemed to contain all necessary information. The dispute over the significance of "complete" on May 10, 2016, however, is immaterial. Perronello could not reasonably have relied on the May 10, 2016 phone call because SLS, in a letter dated May 11, 2016, stated that his RMA was still missing unemployment and rental income information. Wallace Aff. Ex 9. SLS's follow up letter dated May, 31, 2016, also reflects that Perroncello did not in fact rely on the May 10, 2016 phone call, and had during the interval located and submitted the missing income documents. *See* Wallace Aff. Ex. 10.

Finally, Perroncello contends his RMA should have been considered "facially complete" as of May 31, 2016, thus triggering the prohibition against dual tracking.

> A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section.

12 C.F.R. § 1024.41. Perroncello's "facial completeness" argument relies on the SLS letter of that date requesting "another copy" of an explanation letter that he had previously provided. *See* Wallace Aff. Ex. 10 at 3. However, as the letter indicates, SLS considered Perroncello's RMA incomplete, *id.* at 2 ("Your application isn't complete."), and requested not merely a duplicate of his prior submission, but a submission ensuring "all sections are filled out completely and accurately." *Id.* This disposes of any contention of "facial completeness."

## ORDER

For the forgoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE